In re FENN.

(District Court; D. Vermont. August 25, 1909.)

1. BANKRUPTCY (§ 324*)—CLAIM FOR MONEY LENT—INTEREST.

Where claimant lent money to a bankrupt, who was engaged in selling liquors, for use in conducting his business under an agreement that no interest should be charged, but that the bankrupt should buy all of the ale and beer required from claimant, the latter was entitled to interest on the amount owing during a part of the time when the bankrupt was not engaged in such business, and also on a part of the loan falsely represented by the bankrupt to be required to pay for his license, but which was not so required or used.

'[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 511; Dec. Dig. § 324.*]

2. BANKRUPTCY (§ 340*)—CLAIMS—VALIDITY OF CONTRACT.

Evidence considered, and held to show that a bankrupt who was engaged in selling liquor under a license in Vermont made the contract for the purchase of certain liquors from claimant in New York, and not from claimant's salesman in Vermont, where claimant had no license to sell.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

In Bankruptcy. On review of decision of referee.

Lawrence & Lawrence and T. W. Moloney, for claimants.
W. B. C. Stickney and W. H. Botsford, for trustee.
Chas. D. Horn, for bankrupt.

MARTIN, District Judge. Reference is had to the referee's report and the record of the evidence for a more specific statement of the facts. The Mr. Fenn hereinafter mentioned is a resident of the city of Rutland, and for several years had a license there for the sale of liquors. All the items of the claimants' specifications are for money loaned and goods sold in connection with said license business. The same Mr. Fenn has since been adjudicated a bankrupt. This cause has been heard by the referee, and comes into this court upon the claimants' petition for review.

Two questions were raised on hearing before me, the first upon the referee's disallowance of interest on loans made by the claimants to Mr. Fenn, and the second upon the finding of the referee that the contract for three car load shipments in the late spring and early summer of 1907 was made in Rutland with the agent of the claimants, who had no license to sell intoxicating liquors in Vermont, and it therefore was an unlawful sale. .

On the first question the referee finds that there were several loans made by the claimants to Mr. Fenn, one of which was for $4,000, in April, 1903; that two of the several loans were secured by mortgages; that at the time of the first loan in 1903 it was agreed by the claimants that they would not charge interest on said loan, and by Mr. Fenn that he would purchase of them all the ale and beer that might be necessary to supply his customers; and, further, that Mr. Fenn performed his part of the contract, wherefore the referee disallows interest on said loans. I am not inclined to reverse the referee's finding

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of facts as to this agreement of the parties, especially in view of the reasons set forth in his report and his opportunity to observe the appearance of the witnesses, yet I do not concur in his application of this contract in disallowing interest in toto. I hold that this contract should not be construed as a waiver of interest by the claimants during the time when Mr. Fenn was not carrying on the license business. I understand that there was a year that the city of Rutland granted no licenses, and that a portion of this indebtedness remained unpaid during that year. Interest should be allowed for that year on the cash loans then due and owing. I hold further that the loan of $2,200, negotiated in New York April 29, 1907, was made under circumstances whereby Mr. Fenn knew that the claimants understood that the whole of it was for license fees, when, in fact, only $1,200 was required for license. Upon this point observe the language of Mr. Fenn in his testimony as appears on pages 6 to 15, inclusive, of the record. He admitted that Mr. Eden, the business manager of the claimants, understood that the whole $2,200 was necessary for license fees. He was so evasive in stating what he wanted the extra thousand for, or what he did with it, that I am unable to find that he used it in connection with that business. Mr. Fenn also testified that he and Mr. Fessenden, a traveling salesman for the claimant, at first arranged for a loan of $2,700. From a careful reading of this testimony I am clearly of the opinion that Mr. Fenn was either fraudulently colluding with Mr. Fessenden to get $1,000 to $1,500 from the claimants more than was necessary for the payment of his license or that he obtained the extra $1,000 of Mr. Eden through deceit. If the original contract as to interest is to be construed as a waiver of interest on this loan by the claimants, it should apply only to that part of the loan necessary to pay his license, which was $1,200. I hold that interest must be allowed the claimants on $1,000 of the $2,200 note from the date thereof. In coming to this conclusion. I have not considered the question presented on argument as to the admissibility of parol evidence to vary the legal intendment of a written instrument, first, because there was no objection or exception to the admission of that evidence; second, if this agreement was made between the parties and Mr. Fenn performed his part of the contract, the claimants acquiesced in that performance, made no claim for interest on other notes since retired, given under the same arrangement, worded the same, "On demand I promise to pay P. Ballantine & Sons or order —— Dollars. Value received," all silent as to interest, it would appear that there was a mutual mistake as to the legal effect of the language used in the wording of the notes, which mutual mistake the court of equity should correct.

The second question is as to the disallowance of three car load shipments of beer and ale shipped in the spring and early summer of 1907. The agreement of Mr. Fenn to purchase beer and ale of the claimants must stand and be construed with the facts found by the referee as to interest on loans. The circumstances indicate that this contract continued right along. From year to year thereafter while Mr. Fenn had a license the claimants furnished him with necessary

funds to pay for the same. In the line of that business they owned his patronage. There was no necessity for them to send their agent to the city of Rutland to make sales to Mr. Fenn. They had already sold him his full supply in that line. Mr. Fenn testified that he went to New York on the 28th day of April, 1907, and while there, on the last Monday of the same April, which was the 29th, he negotiated a loan of $2,200 with the claimants, and at the same time discussed matters relating to freight, the shipping in car load lots, the prices of different kinds of beer and ale, and their business affairs in general; that he ordered a part of a car load at that time, but swears that he did not order the three subsequent car load shipments, and that those were bought in Rutland of the claimants' traveling salesman, Fessenden. This statement is contrary to all the circumstances, and in conflict with the agreement on the part of Mr. Fenn to buy all his supply of beer and ale of the claimants in consideration that said loan should not bear interest. Mr. Fenn testified that his first contract with the claimants was made in 1903 at Rutland, but he admits that he went to New York prior to that for the purpose of obtaining a loan of $4,000 to be used in connection with his liquor license business in Rutland, and that it was at that time that the agreement was made relating to interest, but states that no prices were then fixed, that the prices were fixed at Rutland when Mr. Eden went to Rutland with the $4,000 and the first mortgage was executed. Mr. Eden testifies that at the time of this agreement in New York the prices were given by him to Mr. Fenn, and that Mr. Fenn then agreed that, if they would make said loan to him, he would purchase of them all his supply of beer and ale. Mr. Fenn admitted that this same agreement was made in New York. I quote from his testimony verbatim:

"Q. 176. Now, Mr. Fenn, in point of fact, was there any such agreement made? A. There was, and he agreed to it in New York.

"Q. 177. He agreed you were to pay no interest? A. Yes.

"Q. 178. Mr. Eden undertook in New York to let you have $4,000 without any interest for you to keep up a saloon and never made any arrangement that you were to buy a penny's worth of his beer and ale? A. That was understood, I think.

"Q. 179. Or was there an agreement of purchase in New York? A. Yes."

He also stated that no prices were talked about in New York, but that the price was agreed to in Rutland. It is apparent that the claimants would not furnish Mr. Fenn $4,000 without interest unless there was an agreement on the part of Mr. Fenn to purchase their goods; and it is improbable that Mr. Fenn agreed to such purchase without prices being stated. The circumstances corroborate Mr. Eden. I find that contract was made in New York, and that the contract covering the three car loads in question was made in New York when the loan for $2,200 was obtained. True it is that Mr. Fessenden was in Rutland and figured with Mr. Fenn as to what a car load composed of certain goods would cost him, and a copy of those figures was left with Mr. Fenn, but he then knew that he must go to New York soon to see if he could borrow money with which to pay his license. Both Fessenden and Fenn knew that Fenn must make that trip. Is there any likelihood that Fessenden would enter into a contract with Fenn at

Rutland when he knew that his principal had already made a contract that was binding upon Fenn, and that Fenn was about to apply for another loan, and that subsequent purchases would depend upon his success in getting it? Mr. Eden swears positively that this contract was made in New York, and Mr. Fessenden swears that he made no such contract with Mr. Fenn in Rutland, and further they both swear that Fessenden had no authority to make contracts of sale with Mr. Fenn, as he was an office patron. The circumstances so strongly corroborate Mr. Eden that I am constrained to reverse the finding of the referee relative to said three car load shipments. Besides, the bankrupt had the goods at a time when he had authority to sell intoxicating liquors under a license. He bought them as a matter of trade for profit, converted them in his trade, and the justice of it all is that the purchase price thereof should be allowed against his bankrupt estate; and it is so ordered.

Except as above set forth, the decision of the referee is affirmed. The cause is referred to Referee O'Brien, as special master, to find the amount due in accordance with the views above stated.